**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JOHN DOE,

       Plaintiff,

    -against-

OPPENHEIMER ASSET MANAGEMENT, INC.,
OPPENHEIMER & CO., INC., BRIAN WILLIAMSON
and JOHN T. McGUIRE,

       Defendant.

Case Number:

1:14-cv-00779-HB

**ORAL ARGUMENT**
**REQUESTED**

---

## DEFENDANTS' JOINT MEMORANDUM
## OF LAW IN SUPPORT OF MOTION TO DISMISS

Michael D. Blanchard
Christopher M. Wasil
BINGHAM McCUTCHEN LLP
One State Street
Hartford, CT  06103
(860) 240-2800
michael.blanchard@bingham.com
christopher.wasil@bingham.com

*Attorneys for Defendants Oppenheimer*
*Asset Management, Inc., Oppenheimer*
*& Co., Inc. and John T. McGuire*

Andrew J. Levander
DECHERT LLP
1095 Avenue of the Americas
New York, New York  10036
(212) 698-3500
andrew.levander@dechert.com

Cheryl A. Krause
Michael S. Doluisio
*(admitted pro hac vice)*
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
(215) 994-4000
cheryl.krause@dechert.com
michael.doluisio@dechert.com

*Attorneys for Defendant*
*Brian Williamson*

April 7, 2014

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

MATERIAL FACTS .............................................................................................. 2

ARGUMENT ....................................................................................................... 4

I.   THE INDIVIDUAL DEFENDANTS ARE NOT
     "EMPLOYERS" AND THUS CANNOT BE HELD
     PERSONALLY LIABLE UNDER THE DODD-FRANK ACT ..................................... 5

     A.   The DFA Prohibits "Employers" From Retaliation, And The
          Individual Defendants Are Not Employers – They Are Employees..................... 5

     B.   The Sarbanes-Oxley Act's
          Anti-Retaliation Provision Demonstrates That
          Congress Knows How To Include Individuals If It Wants................................... 7

     C.   To Construe The Term "Employer" In The
          DFA To Also Include "Employees," Personally
          Liable For Reinstatement, Double Back Pay, And
          Attorneys' Fees, Is Contrary To Second Circuit Precedent.................................. 8

II.  THE DFA CLAIM FAILS AS A MATTER
     OF LAW BECAUSE THE PLAIN MEANING
     OF THE STATUTE CREATES A CAUSE OF ACTION
     ONLY FOR PERSONS WHO HAVE REPORTED TO THE
     SEC BEFORE THE ALLEGED RETALIATORY ACTION......................................... 11

III. PLAINTIFF WAS EMPLOYED AT WILL AND THUS
     CANNOT ASSERT CLAIMS FOR BREACH OF CONTRACT OR
     BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING ............. 13

IV.  THE TORTIOUS INTERFERENCE CLAIM SHOULD BE DISMISSED ................... 15

     A.   Plaintiff's Status As An At-Will Employee Is Fatal To His Claim .................... 15

     B.   Plaintiff Alleges That The Individual Defendants Were
          Acting Within The Scope Of Their Employment, Fatal To His Claim .............. 16

     C.   Plaintiff Fails To Allege That The Individual Defendants
          Used "Wrongful Means" To Terminate Him, Fatal To His Claim...................... 17

V.   PLAINTIFF'S *PRIMA FACIE* TORT CLAIM FAILS FOR
     MULTIPLE, INDEPENDENTLY DISPOSITIVE REASONS ................................... 18

     A.   Plaintiff's At-Will Employment Status Bars His *Prima Facie* Tort Claim......... 18

     B.   The Complaint Does Not Allege The Elements Of *Prima Facie* Tort ............... 19

     C.   The Complaint Fails To Allege That
          Defendants' Sole Motivation Was To Harm Plaintiff ........................................ 20

CONCLUSION..................................................................................................... 22

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahmad v. Morgan Stanley & Co., Inc.*,
No. 13 Civ. 6394 (PAE), 2014 WL 700339 (S.D.N.Y. Feb. 21, 2014)...................................7

*Asadi v. G.E. Energy (USA), L.L.C.*,
720 F.3d 620 (5th Cir. 2013) ........................................................................................12, 13

*Backus v. Planned Parenthood*,
161 A.D.2d 1116 (1st Dep't 1990) ....................................................................................20

*Banko v. Apple Inc.*,
No. CV 13-02977 RS, 2013 WL 7394596 (N.D. Cal. Sept. 27, 2013)...................................12

*Bear Sterns Funding, Inc. v. Interface Group-Nevada, Inc.*,
361 F. Supp. 2d 283 (S.D.N.Y. 2005)..................................................................................22

*BedRoc Ltd. v. United States*,
541 U.S. 176 (2004)...................................................................................................6, 11

*Burger v. Litton Indus., Inc.*,
No. 91 Civ. 0918 (WK), 1996 WL 421449 (S.D.N.Y. Apr. 25, 1996)............................19, 20

*Cent. Bank of Denver v. First Interstate Bank*,
511 U.S. 164 (1994).........................................................................................................7

*CreditSights, Inc. v. Ciasullo*,
No. 05 CV 9345 (DAB), 2008 WL 4185737 (S.D.N.Y. Sept. 5, 2008) .................................14

*Diario El Pais, S.L. v. The Nielsen Co. (US), Inc.*,
No. 07CV11295 (HB), 2008 WL 4833012 (S.D.N.Y. Nov. 6, 2008) .......................................5

*Dooley v. Metropolitan Jewish Health System*,
No. 02-CV-4640(JG), 2003 WL 22171876 (E.D.N.Y. July 30, 2003)...................................16

*In re Edelman*,
295 F.3d 171 (2d Cir. 2002)................................................................................................5

*Egan v. TradingScreen, Inc.*,
No. 10 Civ. 8202 (LBS), 2011 WL 1672066 (S.D.N.Y. May 4, 2011)...................................12

*Evans v. Excellus Health Plan, Inc.*,
No. 6:11-CV-1248, 2012 WL 3229292 (N.D.N.Y. Aug. 6, 2012).............................18, 20, 21

A/75962418.12

*Farzan v. Wells Fargo Bank*,
No. 12 Civ. 1217 (RJS) (JLC), 2013 WL 6231615 (S.D.N.Y. Dec. 2, 2013) ..........................9

*Finley v. Giacobbe*,
79 F.3d 1285 (2d Cir. 1996)......................................................................................16, 17

*Freund v. Lerner*,
No. 09 cv 7117 (HB), 2010 WL 3156037 (S.D.N.Y. Aug. 10, 2010) ......................................5

*Goldberg v. Four Seasons Nursing & Rehab. Ctr.*,
No. 45151/03, 2004 WL 3058158 (N.Y. Sup. Ct. Dec. 30, 2004) ...................................14, 15

*Grant v. Lone Star Co.*,
21 F.3d 649 (5th Cir. 1994) ...............................................................................................8

*Guerra v. Jones*,
421 Fed. Appx. 15 (2d Cir. 2011).......................................................................................9

*Hughes v. Standard Chartered Bank, PLC*,
No. 09 Civ. 4595 (PKC), 2010 WL 1644949 (S.D.N.Y. Apr. 14, 2010) ...................14, 19, 20

*Ingle v. Glamore Motor Sales, Inc.*,
73 N.Y.2d 183 (1989) ................................................................................................15, 18

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*,
62 F.3d 69 (2d Cir. 1995) ...................................................................................................3

*Jain v. McGraw-Hill Companies, Inc.*,
827 F. Supp. 2d 272 (S.D.N.Y. 2011), *aff'd*, 506 F. Appx. 47 (2d Cir. 2012) ........................19

*Kanhoye v. Altana Inc.*,
686 F. Supp. 2d 199 (E.D.N.Y. 2009) .................................................................................18

*Lawson v. FMR LLC*,
134 S. Ct. 1158 (2014) ...........................................................................................6, 7, 10

*Lazard Freres & Co. v. Protective Life Ins. Co.*,
108 F.3d 1531 (2d Cir. 1997)...............................................................................................2

*Lobosco v. N.Y. Telephone Co./NYNEX*,
96 N.Y.2d 312 (2001) ...........................................................................................3, 13, 14

*Longmire v. Wyser-Pratte*,
No. 05 Civ. 6725(SHS), 2007 WL 2584662 (S.D.N.Y. Sept. 6, 2007)..................................17

*Lyda v. FremantleMedia N. Am., Inc.*,
No. 10 Civ. 4773 (DAB), 2011 WL 2898313 (S.D.N.Y. July 14, 2011) .................................5

iii

*Marino v. Vunk,*
    39 A.D.3d 339 (1st Dep't 2007) ........................................................................16

*McHenry v. Lawrence,*
    66 A.D.3d 650 (2d Dep't 2009) ...................................................................15, 16

*Miller v. Maxwell's Int'l, Inc.,*
    991 F.2d 583 (9th Cir. 1993) ............................................................................8

*Murphy v. Am. Home Prods. Corp.,*
    58 N.Y.2d 293 (1983) ................................................................................ 14-15

*Murray v. UBS Secs., LLC,*
    12 Civ. 5914 (JMF), 2013 WL 2190084 (S.D.N.Y. May 21, 2013)........................12

*Murray v. UBS Sec., LLC,*
    No. 12 Civ. 5914 (KPF), 2014 WL 285093 (S.D.N.Y. Jan. 27, 2014)....................7

*MWL Brasil Rodas & Eixos LTDA v. K-IV Enters. LLC,*
    661 F. Supp. 2d 419 (S.D.N.Y. 2009)..................................................................2

*Nelson v. Cap. Cardiology Assocs., P.C.,*
    97 A.D.3d 1072 (3d Dep't 2012) ................................................................. 17-18

*Sabetay v. Sterling Drug, Inc.,*
    69 N.Y.2d 329 (1987) .....................................................................................14

*Spiegel v. Schulmann,*
    604 F.3d 72 (2d Cir. 2010)...........................................................................9, 10

*Stenberg v. Carhart,*
    530 U.S. 914 (2000)........................................................................................11

*Thorpe v. Piedmont Airlines, Inc.,*
    926 F. Supp. 2d 453 (N.D.N.Y. 2013) ................................................................8

*Tomka v. Seiler Corp.,*
    66 F.3d 1295 (2d Cir. 1995)..............................................................................9

*Wathen v. Gen. Elec. Co.,*
    115 F.3d 400 (6th Cir. 1997) ............................................................................8

*Wright v. City of Ithica,*
    No. 5:12-cv-378, 2012 WL 1717259 (N.D.N.Y. May 15, 2012) ...................20, 21

**Statutes**

15 U.S.C. § 78u-6 ................................................................................ *passim*

iv

15 U.S.C. § 78Y-6.................................................................................................11

18 U.S.C. § 1514A..................................................................................................7

29 U.S.C. § 623.......................................................................................................8

29 U.S.C. § 630.......................................................................................................8

42 U.S.C. 2000e-2...................................................................................................8

42 U.S.C. § 2000e...............................................................................................8, 10

42 U.S.C. § 12111.................................................................................................10

42 U.S.C. § 12203.................................................................................................10

**Rules**

Fed. Civ. P. Rule 11...............................................................................................3

Fed. Civ. P. Rule 12...............................................................................................1

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Oppenheimer Asset Management, Inc. ("OAM"), Oppenheimer & Co., Inc. ("OPCO," and together with OAM, the "Corporate Defendants"), Brian Williamson and John T. McGuire (the "Individual Defendants") hereby move to dismiss all claims asserted against them in the Complaint.

## PRELIMINARY STATEMENT

In this case, Plaintiff asserts various claims against the Individual and Corporate Defendants alleging that he was retaliated against for being a purported whistleblower. Specifically, Plaintiff claims that, because he allegedly reported securities law violations to his supervisors at OAM, he was suspended and then instructed to report for a different position within OAM, which he refused to do. But as shown below, each of Plaintiff's theories fails for multiple, independently dispositive reasons. Plaintiff asserts five causes of action in connection with his decision to discontinue employment from OAM, none of which states a valid claim. Count I seeks to impose personal liability upon the Individual Defendants – including for reinstatement and back pay – for alleged violations of the Dodd-Frank Act's ("DFA") whistleblower anti-retaliation provisions. The plain text of the DFA, however, provides that only "employers" may be liable, and neither of the Individual Defendants was Plaintiff's employer, a conclusion clear not only from the DFA's plain text, but from Second Circuit case law construing similar statutes. In addition, Count I fails as to all defendants because Plaintiff – who admittedly did not report securities violations to the SEC until *after* his alleged retaliatory suspension – does not meet the DFA's definition of a "whistleblower."

Counts II and III of the Complaint assert common law claims for breach of contract and breach of the implied covenant of good faith and fair dealing against the Corporate Defendants. These counts fail because Plaintiff was an at-will employee. The limited circumstances in which

an at-will employee may state a valid breach of contract claim are not alleged here.  Moreover, the covenant of good faith and fair dealing does not exist in at-will employment relationships. These counts should therefore be dismissed.

Finally, Plaintiff's claims for tortious interference with contract (Count IV) and *prima facie* tort (Count V) fail for numerous reasons.  New York simply does not recognize a cause of action for wrongful termination of an at-will employee, and plaintiffs may not circumvent this rule by recasting their claims as tortious interference or *prima facie* tort.  Yet, that is precisely what Plaintiff attempts to do here.  Moreover, Plaintiff does not, and cannot, allege many of the necessary elements of these two claims, as explained below.  Accordingly, Plaintiff's tort claims should be dismissed.[1]

## **MATERIAL FACTS**

Plaintiff was employed by OAM[2] as a Private Equity Analyst, and later as an Associate Director.  Compl. ¶¶ 20, 22.  Mr. Williamson was Plaintiff's supervisor.  *Id.* ¶ 11.  Mr. McGuire is Deputy General Counsel and Director of Litigation – not at Plaintiff's employer, OAM – but at OPCO.  *Id.* ¶ 12.[3]

---

[1] New York law applies to Plaintiff's contract and tort claims.  *See, e.g.*, *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1539 (2d Cir. 1997) (applying the "center of gravity" approach to contract claims, under which courts consider factors such as "the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties"); *MWL Brasil Rodas & Eixos LTDA v. K-IV Enters. LLC*, 661 F. Supp. 2d 419, 428 (S.D.N.Y. 2009) (applying New York's "*lex loci delicti*" rule to tort claim, *i.e.*, applying law of state "where the tort occurred").  The Corporate Defendants are located in New York, Compl. ¶¶ 8, 9, and at all relevant times Plaintiff and the Individual Defendants were employed by the Corporate Defendants in New York, where the allegedly tortious acts occurred.  *See id.* at ¶¶ 7-13.  Both the "center of gravity" and "*lex loci delicti*" analyses therefore point to New York law.

[2] OAM is indirectly owned by non-party Oppenheimer Holdings, Inc. ("Oppenheimer").  Compl. ¶ 8.

[3] OPCO is a separate Oppenheimer entity from OAM.  *Id.* ¶ 9.

2

Plaintiff does not allege that:  (a) he had a written employment agreement; (b) his employment was for a specific amount of time; (c) written OAM policies created an implied contract of employment; or (d) OAM's power to terminate Plaintiff at will was in any way limited.  *See id.* ¶¶ 7, 20.  Plaintiff does not make these allegations because, consistent with Rule 11, he cannot allege that he was anything other than an at-will employee.  Indeed, Plaintiff's November 20, 2009 offer letter, which is integral to the allegations of the Complaint,[4] and which Plaintiff countersigned on December 1, 2009, expressly provides that his employment is "at-will."  *See* Declaration of Christopher M. Wasil ("Wasil Decl."), Ex. A at 2.  Plaintiff also signed an acknowledgment on December 14, 2009 that stated, "THE COMPANY IS AN AT-WILL EMPLOYER, WHICH MEANS THAT YOUR EMPLOYMENT RELATIONSHIP WITH THE COMPANY IS FOR NO DEFINITE PERIOD AND MAY BE TERMINATED AT ANY TIME, WITH OR WITHOUT CAUSE AND WITH OR WITHOUT NOTICE AT THE WILL OF EITHER THE COMPANY OR YOU."  Wasil Decl., Ex. B (capitalization in original).

In or around "April 2011," Plaintiff allegedly voiced "objections" to fellow OAM employees regarding OAM's valuation of certain assets ("Cartesian") held by a fund (the "OGR Fund") that OAM had sponsored.  *Id.* ¶¶ 38, 39.  On May 31, 2011, Mr. Williamson allegedly

---

[4] While Plaintiff did not attach these documents, the terms of his actual employment are "integral to the complaint" and may be considered on a motion to dismiss.  *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (internal citations omitted).  Even in the absence of the above quoted documents, Plaintiff was an at-will employee as a matter of law.  Although the Complaint alleges Plaintiff had "a valid and binding employment contract," Compl. ¶ 66, it does not allege (and cannot allege, consistent with Rule 11) that any such agreement specified a durational term, that written OAM policies created an implied employment contract, or that OAM was otherwise limited in its ability to terminate Plaintiff at will.  *See* p. 2, *supra*.  Under New York law, therefore, Plaintiff was an at-will employee, terminable at any time.  *See Lobosco v. N.Y. Telephone Co./NYNEX*, 96 N.Y.2d 312, 316 (2001) ("Where the term of employment is for an indefinite period of time, it is presumed to be a hiring at will that may be freely terminated by either party at any time for any reason or even for no reason.") (affirming order granting motion to dismiss).

terminated Plaintiff for allegedly forging Williamson's signature on reports, *id.* ¶ 40, but the next day Mr. McGuire called Plaintiff and explained that he was suspended (not terminated) due to concerns raised by Mr. Williamson about, among other things, Plaintiff's alleged unauthorized signing of paperwork regarding a certain investment, Triangle Petroleum. *Id.* ¶ 41. Plaintiff then began reporting to others at OAM alleged securities law violations regarding OAM's valuation of the OGR Fund's Cartesian holdings. *Id.* ¶¶ 42, 43.

In or about late June 2011, Mr. McGuire and other OPCO executives – notably, not named as defendants – met with Plaintiff to discuss his future with the company, which depended upon the outcome of OPCO's review of whether Plaintiff signed without authorization the Triangle Petroleum documents. *Id.* ¶ 44. Mr. McGuire later communicated to Plaintiff that he was to report back to work in a different position than he previously held. *Id.* ¶ 45. Nowhere does Plaintiff allege that Mr. McGuire, at any time, acted in any capacity other than OPCO's in-house counsel. *See id.* ¶¶ 12, 40-42, 44, 45.

Plaintiff does not allege that the position he was offered was for a lower salary, or provided for different bonus opportunities or benefits than his prior position. *See id.* ¶ 45. Nevertheless, Plaintiff chose to abandon continued employment with OAM at the same salary, *id.,* and proceeded to then report alleged securities law violations to the SEC's Office of the Whistleblower. *Id.* ¶ 48.

Following Plaintiff's choice to discontinue his employment at OAM, Plaintiff waited two and a half years to bring this action, seeking (among other things) reinstatement and double back pay.

## ARGUMENT

"To survive a motion to dismiss, factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are

4

true."  *Diario El Pais, S.L. v. The Nielsen Co. (US), Inc.*, No. 07CV11295 (HB), 2008 WL 4833012, at *2 (S.D.N.Y. Nov. 6, 2008) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).  "Bald assertions and legal conclusions, or legal conclusions masquerading as facts need not be accepted as true by the Court."  *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Lyda v. FremantleMedia N. Am., Inc.*, No. 10 Civ. 4773 (DAB), 2011 WL 2898313, at *1 (S.D.N.Y. July 14, 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted).  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, however, dismissal is appropriate."  *Freund v. Lerner*, No. 09 CV 7117 (HB), 2010 WL 3156037, at *5 (S.D.N.Y. Aug. 10, 2010) (quoting *Iqbal*).

I.   **THE INDIVIDUAL DEFENDANTS ARE NOT "EMPLOYERS" AND THUS CANNOT BE HELD PERSONALLY LIABLE UNDER THE DODD-FRANK ACT.**

A.   **The DFA Prohibits "Employers" From Retaliation, And The Individual Defendants Are Not Employers – They Are Employees.**

The text of the DFA's anti-retaliation provision states:  "No **employer** may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower . . . ."  15 U.S.C. § 78u-6(h)(A) (emphasis added).  The DFA does not define "employer."  Accordingly, pursuant to well-established canons of statutory construction, the term "employer" in the DFA is ascribed its commonly understood meaning.  *See In re Edelman,* 295 F.3d 171, 177 (2d Cir. 2002) ("[W]here they are not otherwise defined, individual words in a statute carry their ordinary, contemporary, common meaning.") (internal quotation marks omitted).  In common usage, an employer is "[a] person who controls and directs a worker under an express or implied contract of hire **and who pays the worker's salary or wages**."

Black's Law Dictionary (9th ed. 2009), available at Westlaw BLACKS (emphasis added).

Neither of the Individual Defendants was Plaintiff's "employer."  Neither is alleged to have entered into express or implied contracts of employment with Plaintiff, and neither is alleged to have paid Plaintiff's salary or wages.  Indeed, regarding Mr. McGuire, Plaintiff makes no allegation that he ever acted in any capacity other than OPCO's in-house counsel.  *See* Compl. ¶¶ 12, 40-42, 44, 45.  Tellingly, Plaintiff does not include the Individual Defendants in his contract claims.  Rather, Plaintiff's own allegations consistently describe OAM and OPCO (not the Individual Defendants) as Plaintiff's employers.  *See, e.g.*, *id.* ¶ 7 ("Plaintiff was hired by Oppenheimer Asset Management, Inc."); *id.* ¶ 9 ("OPCO issued DOE's paychecks and year-end W-2 tax forms."); *id.* ¶ 10 ("[B]oth OAM and OPCO are considered 'employers' pursuant to the [DFA]."); *id.* ¶ 75 ("[A] valid and binding employment contract existed between DOE and the Corporate Defendants.").

Since the DFA's anti-retaliation provision expressly applies only to "employers," the Court's analysis need go no further with respect to Plaintiff's claim against the Individual Defendants.  *See Lawson v. FMR LLC*, 134 S. Ct. 1158, 1166 (2014) (construing the Sarbanes-Oxley Act's anti-retaliation provision according to its plain meaning:  "Absent any textual qualification, we presume the operative language means what it appears to mean."); *BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004) ("The preeminent canon of statutory interpretation requires us to presume that the legislature says in a statute what it means and means in a statute what is says there") (internal quotation marks omitted).  Because Messrs. McGuire and Williamson are not DFA "employers," Count I (seeking, among other things, reinstatement – relief neither individual could provide) should be dismissed as against the Individual Defendants.

6

**B.     The Sarbanes-Oxley Act's
         Anti-Retaliation Provision Demonstrates That
         <u>Congress Knows How To Include Individuals If It Wants.</u>**

A comparison of the anti-retaliation provisions of the DFA and the Sarbanes-Oxley Act ("SOX") makes plain that the DFA does not provide for liability for anyone other than "employers."   Unlike the DFA, SOX states:   "No **company** . . . **or any officer, employee, contractor, subcontractor, or agent of such company** . . . may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of" whistleblowing.  18 U.S.C. § 1514A(a) (emphasis added).  If Congress had individual employees in mind in the DFA's whistleblower protections, it could have said so.   Congress did not.   Accordingly, Plaintiff's attempt to hold the Individual Defendants liable as "employers" asks this Court to (impermissibly) read words into the statute.  *See Lawson,* 134 S. Ct. at 1165 ("The ordinary meaning of 'an employee' in this proscription is the contractor's own employee.   FMR's interpretation of the text requires insertion of 'of a public company' after 'an employee.'   But where Congress meant 'an employee of a public company,' it said so."); *Cent. Bank of Denver v. First Interstate Bank*, 511 U.S. 164, 176-77 (1994) (finding Congress "knew how to impose . . . liability when it chose to do so").[5]

---

[5] Decisions from this Court recognize that SOX and the DFA are separate pieces of legislation.  *See Murray v. UBS Sec., LLC*, No. 12 Civ. 5914 (KPF), 2014 WL 285093, at *8 (S.D.N.Y. Jan. 27, 2014) (granting motion to compel arbitration:  "The Exchange Act, Sarbanes-Oxley, and Dodd-Frank are separate pieces of federal legislation, each of which provides a party with distinct rights and responsibilities."); *Ahmad v. Morgan Stanley & Co., Inc.*, No. 13 Civ. 6394 (PAE), 2014 WL 700339, at *5 (S.D.N.Y. Feb. 21, 2014) (rejecting plaintiff's argument for retroactive application of the DFA: "[The DFA] does not amend the procedural rules for bringing a [SOX] whistleblower claim.  Rather, it creates an entirely new whistleblower cause of action, with its own prohibited conduct, statute of limitations, and remedies.").  The DFA's "entirely new whistleblower cause of action," unlike a SOX claim, does not provide for personal liability for individuals.

7

### C.   To Construe The Term "Employer" In The DFA To Also Include "Employees," Personally Liable For Reinstatement, Double Back Pay, And Attorneys' Fees, Is Contrary To Second Circuit Precedent.

The Second Circuit has held that Congress' use of the word "employer" and even "person" in other federal employment statutes does not create personal liability for employees of the "employer."  For example, Title VII states:  "It shall be an unlawful employment practice for an **employer** – (1) to . . . discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. 2000e-2 (emphasis added).  Similarly, the Age Discrimination in Employment Act (ADEA) states:  "It shall be unlawful for an **employer** . . . to . . . discriminate against any individual . . . because of such individual's age."  29 U.S.C. § 623(a) (emphasis added).  Significantly, both Title VII and the ADEA define the term "employer" – primarily for the purpose of setting a minimum number of employees the employer must have to come under their mandates – to include "agents" of the employer within the definitions.  *See* 42 U.S.C. § 2000e(b) (Title VII:  "The term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any **agent** of such a person . . . .") (emphasis added); 29 U.S.C. § 630(b) (ADEA:  "The term 'employer' means a person engaged in an industry affecting commerce who has twenty or more employees . . . . The term also means (1) any **agent** of such a person . . . .") (emphasis added).[6]  Both statutes, in turn, define "person" to "include[] one or more **individuals**."  42 U.S.C. § 2000e(a); 29 U.S.C. 630(a) (emphasis added).  In other words, Title VII and the ADEA each

---

[6] Numerous Circuit Courts, as well as District Courts within the Second Circuit, have reasoned that the inclusion of "agents" in Title VII and the ADEA was meant only to impose *respondeat superior* liability upon company defendants, and not to impose personal liability.  *See, e.g.*, *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 406 (6th Cir. 1997); *Grant v. Lone Star Co.*, 21 F.3d 649, 652 (5th Cir. 1994); *Miller v. Maxwell's Int'l, Inc.*, 991 F.2d 583, 588 (9th Cir. 1993); *Thorpe v. Piedmont Airlines, Inc.*, 926 F. Supp. 2d 453, 462 (N.D.N.Y. 2013) (granting motion to dismiss ADEA claims against individuals).

contain two terms, "agent" and "individual," that could be construed as giving rise to personal liability.

Nonetheless, the Second Circuit has refused to find individuals personally liable under either Title VII or the ADEA. *See, e.g.*, *Guerra v. Jones*, 421 Fed. Appx. 15 (2d Cir. 2011) (affirming grant of summary judgment: "[D]ismissal of the Title VII and ADEA claims against the Individual Defendants was appropriate as neither statute subjects individuals, **even those with supervisory liability over the plaintiff**, to personal liability.") (emphasis added); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995) ("[I]ndividual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII."); *see also Farzan v. Wells Fargo Bank*, No. 12 Civ. 1217 (RJS) (JLC), 2013 WL 6231615, at *17 (S.D.N.Y. Dec. 2, 2013) (granting motion to dismiss: "It is well-established that neither Title VII nor the ADEA provide for individual liability."). Among several reasons for its decision, the Court in *Tomka* held that Title VII does not provide for personal liability because, when it was enacted, "**a successful Title VII plaintiff was typically limited to reinstatement and backpay as potential remedies . . . which are most appropriately provided by employers, defined in the traditional sense of the word**." *Tomka*, 66 F.3d at 1314 (emphasis added). That same principle applies here. The DFA's anti-retaliation provision provides successful plaintiffs with reinstatement, two times back pay and attorneys' fees, which only an employer can provide. 15 U.S.C. § 78u-6(h)(C). The Court should conclude, therefore, that Congress intended "employer" to be used "in the traditional sense of the word."

Perhaps even more persuasive is the Second Circuit's holding in *Spiegel v. Schulmann*, 604 F.3d 72, 79-80 (2d Cir. 2010), which found no personal liability under the anti-retaliation provision of the Americans with Disabilities Act ("ADA"). The ADA states: "No **person** shall

discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter . . . ." 42 U.S.C. § 12203(a) (emphasis added). It further defines "person" by reference to Title VII, which defines "person" to "include[] one or more **individuals**." 42 U.S.C. § 12111(7); 42 U.S.C. § 2000e(a) (emphasis added). Despite what appears to be a clear intent to impose personal liability upon individuals, the court in *Speigel* held that the ADA does **not** impose personal liability. The court reasoned that the ADA's remedies, *i.e.*, reinstatement and back pay, are inconsistent with personal liability: "This conclusion is arguably contrary to a literal reading of [the ADA], where the phrase '[n]o person shall' suggests the possibility of individual liability." *Speigel*, 604 F.3d at 79-80. "Because we apply the remedies provided in Title VII to the anti-retaliation provision of the ADA, however, [the ADA] presents that 'rare case[]' in which 'a broader consideration of' the ADA, in light of the remedial provisions of Title VII, 'indicates that this interpretation of the statutory language does not comport with Congress'[s] clearly expressed intent." *Id.* at 80 (affirming summary judgment); *see also Lawson*, 134 S. Ct. at 1167 ("Regarding remedies, [SOX] states that a successful claimant shall be entitled to 'reinstatement' . . . as well as 'the amount of back pay, with interest.' . . . It is difficult, if not impossible to see how a contractor or subcontractor could provide those remedies to an employee of a public company.").

A *fortiorari*, the Court should reject the claim of individual employee liability in this case. Unlike Title VII, the ADEA and the ADA – all of which expressly identify individuals as coming within their scope but are construed by the Second Circuit to apply only to employers – the DFA on its face only applies to "employers." If Title VII and the ADEA, both of which refer to "agents" and "individuals," and the ADA, which expressly applies to "person[s]," do not provide for personal liability, then the DFA, which does *not* make such references, likewise does

not provide for personal liability.

In sum, Count I should be dismissed as against the Individual Defendants.

## II. THE DFA CLAIM FAILS AS A MATTER OF LAW BECAUSE THE PLAIN MEANING OF THE STATUTE CREATES A CAUSE OF ACTION ONLY FOR PERSONS WHO HAVE REPORTED TO THE SEC BEFORE THE ALLEGED RETALIATORY ACTION.

Plaintiff's claim also fails as a matter of law because the DFA prohibits retaliation only against "whistleblowers," *i.e.*, individuals who have reported not simply internally but to the SEC prior to the alleged retaliatory conduct.

As stated above (Section I.A., *supra*), the "preeminent canon of statutory interpretations" requires courts "to presume that [the] legislature says in a statute what it means and means in a statute what it says there.'" *BedRoc Ltd.*, 541 U.S. at 183; *Stenberg v. Carhart*, 530 U.S. 914, 942 (2000) ("When a statute includes an explicit definition, we must follow that definition . . . ."). Here, the plain language of the DFA's whistleblower provisions prohibit an employer from taking retaliatory action against a "**whistleblower** . . . because of any lawful act done by the **whistleblower** –

  (i)  in providing information to the Commission . . . .;

  (ii)  in initiating, testifying in, or assisting in any investigation . . . .; or

  (iii)  in making disclosures that are required or protected under the Sarbanes-Oxley Act . . . ."

15 U.S.C. § 78u-6(h)(1)(A)(i)-(iii) (emphasis added).  A "whistleblower," in turn, is defined as "any individual who provides information relating to a violation of the securities laws to the [Securities Exchange] Commission . . . ." *Id.* § 78Y-6(A)(6).  Congress, in other words, has:  (1) statutorily defined the term "whistleblower" to include only individuals who provide information **to the SEC**; and (2) incorporated that definition into each subsection of (h)(1)(A).  As such, the

statute is unambiguous and makes it a prerequisite for relief under any subsection of § 78u-6(h)(1)(A) that the plaintiff first have reported to the SEC.

Based on this plain language, the only Circuit Court to address the issue of whether a whistleblower must report to the SEC prior to the alleged retaliatory conduct has held that "the whistleblower-protection provision unambiguously requires individuals to provide information relating to a violation of the securities laws *to the SEC* to qualify for protection from retaliation . . . ."  *Asadi v. G.E. Energy (USA), L.L.C.*, 720 F.3d 620, 629-30 (5th Cir. 2013) (affirming dismissal of whistleblower claim because a plaintiff reported only internally before alleged retaliatory firing and therefore did not qualify as a "whistleblower" when he "ma[de] disclosures that are required or protected under the Sarbanes-Oxley Act" under Section (A)(iii)) (emphasis in original).  In interpreting the statute, the Fifth Circuit observed that "[i]mportantly, the placement of the three categories of protected activity in subsection (h) follows the phrase "[n]o employer may discharge . . . or in any other manner discriminate against, a *whistleblower* . . . because of any lawful act done by the *whistleblower* . . . ."  *Asadi*, 720 F.3d at 626 (emphasis in original); *see also Banko v. Apple Inc.*, No. CV 13-02977 RS, 2013 WL 7394596, at *4-5 (N.D. Cal. Sept. 27, 2013).  Because Congress purposefully chose to use the defined term "whistleblower," rather than the word "individual" or "employee," the Congressional definition must be heeded.  *Asadi*, 720 F.3d at 626-27.

A handful of district courts, including some in the Southern District of New York, have reached a different conclusion and held that mere internal reporting is sufficient to qualify for relief under the DFA.[7]  Those decisions, of course, are not binding on this Court and, Defendants

---

[7]  *See, e.g.*, *Murray v. UBS Secs., LLC*, 12 Civ. 5914 (JMF), 2013 WL 2190084, at *5 (S.D.N.Y. May 21, 2013); *Egan v. TradingScreen, Inc.*, No. 10 Civ. 8202 (LBS), 2011 WL 1672066, at *5 (S.D.N.Y. May 4,

(Footnote Continued on Next Page.)

12

respectfully submit, are not consistent with the plain language of the statute.  Instead, this Court should follow the sound reasoning and persuasive authority of the Fifth Circuit in *Asadi* and dismiss the Whistleblower claim because Plaintiff does not qualify for relief as pleaded as matter of law.

### III.   PLAINTIFF WAS EMPLOYED AT WILL AND THUS CANNOT ASSERT CLAIMS FOR BREACH OF CONTRACT OR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING.

Plaintiff's claims against the Corporate Defendants for breach of contract (Count II) and breach of the covenant of good faith and fair dealing (Count III) also fail as a matter of law. Simply put, New York law does not recognize a cause of action for breach of contract or breach of the implied covenant of good faith and fair dealing in at-will employment contracts.

As noted above, Plaintiff was employed by OAM as a Private Equity Analyst, and later as an Associate Director.  Compl. ¶¶ 20, 22.  Plaintiff does not allege the nature of his employment or any facts that would suggest the employment was other than at will.  And in fact, Plaintiff's offer letter and a separate acknowledgment, each of which he signed, provide that his employment was at will.  *See* Wasil Decl., Exs. A, B.

An at-will employee may only bring a breach of contract action against his former employer based upon his discharge "when [he] can show that the employer made its employee aware of an express written policy limiting the right of discharge and the employee detrimentally relied on that policy in accepting employment."  *Lobosco*, 96 N.Y.2d at 316.  The Complaint contains no allegations suggesting the existence of such an "express written policy," let alone

---

(Footnote Continued from Previous Page.)

2011).  Notably, a case addressing whether an individual who reports wrongdoing only within his company triggers whistleblower protection under the DFA may be addressed soon by the Second Circuit in *Liu v. Siemens AG*, No. 13-4385-cv.

that Plaintiff detrimentally relied on it in accepting his employment.  *See* Compl. ¶¶ 7, 20 (describing Plaintiff's hiring).  Accordingly, the contract claim should be dismissed.  *See Lobosco*, 96 N.Y.2d at 316-17 (affirming dismissal where employee manual precluded plaintiff's reliance upon its terms); *Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 336 (1987) (affirming dismissal where plaintiff "made general references to an employer's manual, [but] cited no provisions pertinent to the right to termination").[8]

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing should similarly be dismissed.  "The Court of Appeals expressly reject[s] the concept of implied covenant of good faith in employment contracts."  *Goldberg v. Four Seasons Nursing & Rehab. Ctr.*, No. 45151/03, 2004 WL 3058158, at *3 (N.Y. Sup. Ct. Dec. 30, 2004) (citing *Sabetay*).  "In the context of [at-will] employment it would be incongruous to say that an inference may be drawn that the employer impliedly agreed to a provision which would be destructive of his right of termination."  *Sabetay*, 69 N.Y.2d at 335-36.  Purported whistleblowers are not granted an exception.  *See id.* (affirming dismissal of good faith claim where plaintiff was allegedly terminated for blowing the whistle on employer's financial improprieties); *Murphy v. Am. Home*

---

[8] Plaintiff makes vague references to an unidentified "agreement related to deferred compensation in the form of *prorated* performance bonuses" (Compl. ¶ 68; *see also id.* ¶ 66) (emphasis in original).  These allegations are insufficient to overcome dismissal of his breach of contract claim.  Plaintiff makes no attempt to:  (a) explain the origin of any deferred compensation agreement; (b) identify the parties to such an agreement; (c) quote or even describe relevant terms; (d) allege that he was entitled to be paid a bonus even if terminated; or (e) allege how his termination otherwise breached the alleged contract.  Plaintiff's off-hand remarks about a purported contract do not satisfy Rule 12(b)(6).  *See Hughes v. Standard Chartered Bank, PLC*, No. 09 Civ. 4595 (PKC), 2010 WL 1644949, at *3 (S.D.N.Y. Apr. 14, 2010) (granting motion to dismiss claim for breach of at-will employment contract where plaintiff did not specifically identify the "various written and oral representations" from the employer that created an implied contract); *see also CreditSights, Inc. v. Ciasullo*, No. 05 CV 9345 (DAB), 2008 WL 4185737, at *11 (S.D.N.Y. Sept. 5, 2008) (dismissing breach of contract claim for failure to describe contract in sufficient detail:  "New York law is eminently clear that a proper breach of contract claim must identify specifically breached contract terms.").

A/75962418.12

*Prods. Corp.*, 58 N.Y.2d 293, 304-05 (1983) (same); *cf. Goldberg*, 2004 WL 3058158, at *3 (dismissing good faith claim where plaintiff was allegedly terminated for refusing to participate in her employer's Medicaid scheme).  Dismissal is therefore well warranted.

## IV.    THE TORTIOUS INTERFERENCE CLAIM SHOULD BE DISMISSED.

The Complaint alleges that the Individual Defendants tortiously interfered with Plaintiff's purported "employment contract" between Plaintiff and OAM.   This claim fails for three reasons.  First, Plaintiff's tortious interference claim is a disguised claim for wrongful discharge of at-will employment, a cause of action not recognized in New York.  Second, the Complaint expressly alleges that the Individual Defendants acted within the scope of their employment in terminating Plaintiff, which is also fatal to his claim.  Third, as an at-will employee, Plaintiff's tortious interference claim can only survive if the Complaint sufficiently alleges "wrongful conduct" by the Individual Defendants when terminating him, and it does not.

### A.    Plaintiff's Status As An At-Will Employee Is Fatal To His Claim.

As explained above (Section III, *supra*), Plaintiff was employed by OAM at will.  This is fatal to Plaintiff's tortious interference claim.  "New York does not recognize a cause of action for the tort of abusive or wrongful discharge of an at-will employee, and this rule cannot be circumvented by casting the cause of action in terms of tortious interference with employment."  *McHenry v. Lawrence*, 66 A.D.3d 650, 651 (2d Dep't 2009) (affirming motion to dismiss).  As the Court of Appeals has explained:

> In holding that there is no cause of action in tort for abusive or wrongful discharge of an at-will employee, we declined to allow the use of substitute nomenclature or causes, such as a prima facie tort . . . to bootstrap the threshold deficiency in a wrongful discharge claim.  Similarly, the plaintiff here cannot be allowed to evade the employment at-will rule and relationship by recasting his cause of action in the garb of a tortious interference with his employment.

*Ingle v. Glamore Motor Sales, Inc.*, 73 N.Y.2d 183, 188-89 (1989). That is precisely what

A/75962418.12

Plaintiff attempts to do here.  Plaintiff's tortious interference claim should be dismissed for this reason alone.

### B. Plaintiff Alleges That The Individual Defendants Were Acting Within The Scope Of Their Employment, Fatal To His Claim.

All tortious interference claims, whether employment related or not, require that the defendant be a third party to the contract.  *See McHenry*, 66 A.D.3d at 651 (listing elements of tortious interference claim).  In the employment context, agents for the company – such as the Individual Defendants – are presumed to be acting on behalf of the company, and are thus not third parties unless acting outside the scope of their employment.[9]  "In order to show that a defendant-employee is a 'third party,' a plaintiff must show that the defendant-employee has exceeded the bounds of his or her authority."  *Finley v. Giacobbe*, 79 F.3d 1285, 1295 (2d Cir. 1996) (affirming grant of summary judgment dismissing tortious interference claim); *see also Marino v. Vunk*, 39 A.D.3d 339, 240 (1st Dep't 2007) ("[W]here, as here, the individual defendants are co-employees of plaintiff, in order for a claim of tortious interference with an

---

[9] The purpose of maintaining the third-party requirement in employment actions is to prevent claims exactly like Plaintiff's.  As one federal court explained:

> I understand New York law to properly withhold 'third party' status in tortious interference claims like [the plaintiff's] where the defendants, as in this case, were authorized to fire the plaintiff.  A different rule would create an unattractive incentive for employers: never to explain the bases of their decisions to terminate employees.  If an employee could circumvent the at-will doctrine simply by alleging, as [the plaintiff] has done here, that the stated reasons for her termination are fabricated, employers would be well served to stay silent if an at-will employee asks why she was fired.  Otherwise, the employee – who cannot sue the employer for breach of contract – can allege fraud and force her supervisors into court, not to defend the firing *per se*, but to defend the *bona fides* of the *reasons* for the firing.  It would be anomalous, in a setting where an employer may act for no reason at all, or even for a bad (but not invidiously discriminatory) reason, to require an employer to establish its sincere belief in the reason given.

*Dooley v. Metropolitan Jewish Health System*, No. 02-CV-4640(JG), 2003 WL 22171876, at *13 (E.D.N.Y. July 30, 2003) (denying as futile leave to amend complaint to add tortious interference claim) (emphasis in original).

employment relationship to lie, it must be alleged that defendant co-employees acted outside the scope of their authority.").[10]

Plaintiff does not allege that the Individual Defendants acted beyond "the bounds of [their] authority."  In fact, Plaintiff expressly alleges the opposite.  *See, e.g.*, Compl. ¶ 11 (Mr. Williamson "was DOE's direct supervisor"); ¶ 13 (alleging that both Mr. Williamson and Mr. McGuire "had – and exercised – supervisory powers over DOE, including the power to suspend and terminate his employment").  As such, Plaintiff's tortious interference claim should be dismissed.  *See Finley*, 79 F.3d at 1296 (affirming the dismissal of tortious interference claims against a defendant who "had direct supervisory authority" over plaintiff); *see also Longmire v. Wyser-Pratte*, No. 05 Civ. 6725(SHS), 2007 WL 2584662, at *16 (S.D.N.Y. Sept. 6, 2007) (finding that it "would be nonsensical" to allow a claim for third-party tortious interference to proceed against a fund manager who was plaintiff's employer and supervisor).

### C.    Plaintiff Fails To Allege That The Individual Defendants Used "Wrongful Means" To Terminate Him, Fatal To His Claim.

Even if the Complaint alleged that the Individual Defendants were acting outside the scope of their employment in their interactions with Plaintiff (and it does not), Plaintiff's tortious interference claim would nonetheless fail.  For an at-will employee to establish a claim for tortious interference, he must "demonstrate that the defendant utilized wrongful means to effect his termination."  *Nelson v. Cap. Cardiology Assocs., P.C.*, 97 A.D.3d 1072, 1074 (3d Dep't 2012) (affirming dismissal).  "Such 'wrongful means,' in turn, must amount to a crime or

---

[10] The Complaint simultaneously paints the Individual Defendants as Plaintiff's "employers" (albeit conclusorily) *and* third parties to Plaintiff's employment relationship with OAM.  Neither characterization is accurate; the Individual Defendants were Plaintiff's co-employees and agents of their respective employers.

17

independent tort . . . e.g., physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure." *Id.* Importantly, statutory violations are not "independent torts," as a matter of law. *Kanhoye v. Altana Inc.*, 686 F. Supp. 2d 199, 215 (E.D.N.Y. 2009) ("[T]he retaliatory and discriminatory acts [the plaintiff] alleges [that the defendants] committed would be insufficient to establish 'independent tortious act[s]' under New York law to sustain a tortious interference claim brought by an employee they managed. . . . [A]lleged violations of federal, state, and city anti-discrimination laws are not torts under New York law."). Thus, even if Plaintiff's DFA claim otherwise survived (it should not), the alleged violation of the DFA cannot serve as the "independent tort" necessary for a tortious interference claim, as a matter of law. Plaintiff's tortious interference claim should therefore be dismissed for this reason as well.

## V.   PLAINTIFF'S *PRIMA FACIE* TORT CLAIM FAILS FOR MULTIPLE, INDEPENDENTLY DISPOSITIVE REASONS.

### A.   Plaintiff's At-Will Employment Status Bars His *Prima Facie* Tort Claim.

As explained above (Section IV.A., *supra*), New York does not recognize a cause of action for wrongful discharge of an at-will employee, and it therefore unsurprisingly prohibits plaintiffs from asserting such claims under the label of a *prima facie* tort. "In holding that there is no cause of action in tort for abusive or wrongful discharge of an at-will employee, we declined to allow the use of substitute nomenclature or causes, such as a prima facie tort." *Ingle*, 73 N.Y.2d at 188-89; *see also Evans v. Excellus Health Plan, Inc.*, No. 6:11-CV-1248 (LEK/DEP), 2012 WL 3229292, at *5 (N.D.N.Y. Aug. 6, 2012) ("An at-will employee cannot use a *prima facie* tort claim as a 'bootstrap' to circumvent the lack of a tort claim for wrongful discharge."). This rule exists to prevent claims such as the present one.

**B.**     **The Complaint Does Not Allege The Elements Of *Prima Facie* Tort.**

Even if New York recognized a cause of action for *prima facie* tort arising from the discharge of an at-will employee, Plaintiff fails to plead the fundamental elements of the claim. A claim for *prima facie* tort requires: "(1) intentional infliction of harm, (2) causing **special damages**, (3) without excuse or justification, (4) by an **act or series of acts that would otherwise be lawful**." *Burger v. Litton Indus., Inc.*, No. 91 Civ. 0918 (WK) (AJP), 1996 WL 421449, at *23 (S.D.N.Y. Apr. 25, 1996) (emphasis added).

Among other problems, Plaintiff fails to allege special damages, the second element of a *prima facie* tort claim. The Complaint's assertion that Plaintiff has suffered "damages, and is entitled to consequential and punitive damages, in an amount to be determined at trial" or "through discovery" (Compl. ¶ 80) is the exact sort of allegation that has been held to be insufficient. *See Hughes*, 2010 WL 1644949, at *9 ("A pleading which states that special damages were incurred in the form of a specific injury in an amount to be proved at trial is insufficient to satisfy this burden.") (*citing Epifani v. Johnson*, 65 A.D.3d 224, 233 (2d Dep't 2009)). Plaintiff also alleges that he suffered "particularized damages in an amount to be determined through discovery, which is the estimated amount of the bonus that Plaintiff earned prior to being terminated." Compl. ¶ 80. This allegation, too, fails to state a claim. *See Jain v. McGraw-Hill Companies, Inc.*, 827 F. Supp. 2d 272, 279-80 (S.D.N.Y. 2011), *aff'd*, 506 F. Appx. 47 (2d Cir. 2012) ("Plaintiff's allegation that she has suffered 'pecuniary harm, including without limitation, lost salary, bonuses, benefits and other income, as well as other damages . . . ' is insufficiently concrete to sustain her cause of action.") (internal citations omitted).

Plaintiff also fails to allege that Defendants' actions were "otherwise lawful," the fourth element of a tortious interference claim. *See Burger*, 1996 WL 421449, at *23. Plaintiff claims his discharge was **unlawful** under the DFA. Unless this Court dismisses the DFA claim,

therefore, Plaintiff's *prima facie* tort claim should be dismissed. *See Evans*, 2012 WL 3229292, at *7 (granting motion to dismiss *prima facie* tort claim where plaintiff also alleged that defendants had engaged in age discrimination and retaliatory discharge); *Wright v. City of Ithica*, No. 5:12-cv-378 (GLS/TWD), 2012 WL 1717259, at *4 (N.D.N.Y. May 15, 2012) (finding as ground for dismissal of *prima facie* tort claim that the "alleged injurious action – employment discrimination based on race – is not an act that would otherwise be lawful").

### C.   The Complaint Fails To Allege That Defendants' Sole Motivation Was To Harm Plaintiff.

In addition, Plaintiff fails sufficiently to allege that Defendants carried the "malevolent intent" required to state a valid *prima facie* tort claim. "There can be no recovery [for *prima facie* tort] unless a 'disinterested malevolence' to injure the plaintiff constitutes the sole motivation for defendants' otherwise lawful act." *Backus v. Planned Parenthood*, 161 A.D.2d 1116, 1117 (1st Dep't 1990) (reversing denial of motion to dismiss). "[T]he plaintiff cannot recover unless the defendant's conduct was not only harmful, but done with the sole intent to harm." *Burger*, 1996 WL 421449, at *23. "Motives such as profit, self-interest, or business advantage will defeat a prima facie tort claim." *Id.*

Here, Plaintiff alleges that Defendants terminated him in retaliation for his purported reports of wrongdoing. Such allegations of retaliatory termination do not state a claim for *prima facie* tort, as a matter of law. As the Court in *Hughes*, 2010 WL 1644949, at *9, explained when dismissing a claim for *prima facie* tort:

> [P]laintiff fails to allege that his termination was motivated *solely* by malice. In fact, plaintiff alleges that "Goulding ordered Hughes'[s] termination to retaliate against him for informing SCB of its unlawful loan practices." . . . **Such an allegation is contrary to the requirement that defendants' actions were "motivated solely by disinterested malevolence."**

*Id.*, at *9 (citing *Epifani*, 65 A.D.3d at 232) (emphasis added).

The Complaint's remaining allegations do not lead to a different result.  Regarding the Corporate Defendants, Plaintiff lumps them with the Individual Defendants in alleging, in conclusory terms, that "Defendants' malevolence toward him" may be inferred because they "have harassed and suspended [him] without lawful basis and have caused [him] to be denied a bonus payment to which he was entitled by virtue of work already performed."  Compl. ¶ 79. Aside from the fact that allegations that a defendant acted "without lawful basis" are fatal to a *prima facie* tort claim (*see Wright*, 2012 WL 1717259, at *4), this allegation represents another attempt to repackage a wrongful termination claim.  This is impermissible.  *See Evans*, 2012 WL 3229292, at *5 ("An at-will employee cannot use a prima facie tort claim as a 'bootstrap' to circumvent the lack of a tort claim for wrongful discharge.").

Moreover, as to the Individual Defendants, Plaintiff fails to plead a **<u>single fact</u>** that could suggest that Mr. McGuire or Mr. Williamson acted **<u>solely</u>** out of "disinterested malevolence." With respect to Mr. McGuire, Plaintiff's allegations say little more than that Mr. McGuire was, as in-house counsel, the messenger of unwanted news:  (a) Mr. McGuire discussed with Plaintiff his suspension resulting from Mr. Williamson's accusations of forgery (Compl. ¶ 41); (b) Plaintiff brought information about OAM's Cartesian valuation to Mr. McGuire, and Mr. McGuire refuted any impropriety (*id.* ¶ 42); (c) Mr. McGuire discussed with Plaintiff the latter's potential misconduct (*id.*); (d) Mr. McGuire and others discussed with Plaintiff the possibility of continuing in his employment (*id.* ¶ 44); and (e) when Mr. McGuire communicated to Plaintiff OAM's offer to continue employment in a different position, Plaintiff rejected the offer (*id.* ¶ 45).  These allegations fail to allege any actionable wrongdoing whatsoever by Mr. McGuire, let alone "disinterested malevolence."

With regard to Mr. Williamson, the Complaint alleges that Mr. Williamson's actions

were motivated, at least in part, by economic self-interest.   Plaintiff alleges that Mr. Williamson's *primary* motivation was to attract investors, *see id.* ¶¶ 32, 34, 43, and to prevent investors from losing confidence in Oppenheimer and Mr. Williamson.  *See id.* at ¶ 43 (alleging that investor "confidence in Oppenheimer would diminish substantially, to say the least" if they were informed of Plaintiff's concerns).  This assertion is fatal to Plaintiff's claims against Mr. Williamson.  *See Bear Stearns Funding, Inc. v. Interface Group-Nevada, Inc.*, 361 F. Supp. 2d 283, 307 (S.D.N.Y. 2005) (dismissing *prima facie* tort claim where it was "clear from [the plaintiff's] own assertions [that the defendant] was acting, at least in part to further its own economic interest").  Thus, Plaintiff's *prima facie* tort claim should be dismissed as to Mr. Williamson as well.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that this Court grant their motion to dismiss the Complaint, with prejudice.

22

Respectfully submitted,


/s/ Michael D. Blanchard
Michael D. Blanchard
Christopher M. Wasil
BINGHAM McCUTCHEN LLP
One State Street
Hartford, CT  06103
(860) 240-2700
michael.blanchard@bingham.com
christopher.wasil@bingham.com

*Attorneys for Defendants Oppenheimer
Asset Management, Inc., Oppenheimer &
Co., Inc. and John T. McGuire*



/s/ Andrew J. Levander
Andrew J. Levander
DECHERT LLP
1095 Avenue of the Americas
New York, New York  10036
(212) 698-3500
andrew.levander@dechert.com

Cheryl A. Krause
Michael S. Doluisio
*(admitted pro hac vice)*
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA  19104
(215) 994-4000
cheryl.krause@dechert.com
michael.doluisio@dechert.com

*Attorneys for Defendant
Brian Williamson*


April 7, 2014

23

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JOHN DOE,

       Plaintiff,

     -against-

OPPENHEIMER ASSET MANAGEMENT, INC.,
OPPENHEIMER & CO., INC., BRIAN WILLIAMSON
and JOHN T. McGUIRE,

         Defendant.

Case Number:

1:14-cv-00779-HB

**CERTIFICATE OF SERVICE**

     This is to certify that a copy of the foregoing Defendants' Joint Memorandum of Law in

Support of Motion to Dismiss was served this 7th day of April, 2014 via operation of the Court's

ECF system, or by first class mail to anyone unable to receive such notice.

Dated:  Hartford, Connecticut
      April 7, 2014

                        BINGHAM McCUTCHEN LLP


                        /s/ Christopher M. Wasil
                        Christopher M. Wasil
                        BINGHAM McCUTCHEN LLP
                        One State Street
                        Hartford, CT  06103
                        (860) 240-2700
                        christopher.wasil@bingham.com

                        *Attorneys for Defendants Oppenheimer*
                        *Asset Management, Inc., Oppenheimer &*
                        *Co., Inc. and John T. McGuire*